UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MICHAEL E. BOTNICK AND                  CIVIL ACTION
JILL LASSEN BOTNICK

VERSUS                                  NO.  06-2595

VIGILANT INSURANCE COMPANY,             SECTION "R"(5)
HARTWIG MOSS INSURANCE
AGENCY, LTD., AND XYZ
INSURANCE COMPANY

**ORDER AND REASONS**

Plaintiffs move to remand this matter, which was transferred to this section because plaintiffs claim damages pursuant to Louisiana's Valued Policy Law, La. Rev. Stat. § 22:695. For the following reasons, the Court GRANTS the plaintiffs' motion.


**I.    BACKGROUND**

Plaintiffs Michael Botnick and Jill Lassen Botnick sued Vigilant Insurance Co. and Hartwig Moss Insurance Agency in state court and defendants removed. Vigilant is a foreign insurer with neither citizenship nor a principal place of business in

Louisiana.  Hartwig Moss is a corporation with its domicile and principal place of business in Louisiana.  As such, the parties are not completely diverse, a requirement for a federal court to have jurisdiction under 28 U.S.C. § 1332.  *See McLaughlin v. Mississippi Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004). Plaintiffs now move to remand this matter to state court. Defendants assert that the Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332 because Hartwig Moss was improperly joined.  Plaintiffs do not dispute defendants' assertion that their claims exceed the $75,000 amount-in-controversy requirement of section 1332.  *See* 28 U.S.C. § 1332. Plaintiffs also move under 28 U.S.C. § 1447(c) for an award of attorney's fees and other costs.


## II.  LEGAL STANDARDS

### A.   Applying Louisiana Law

Because jurisdiction is based on diversity, Louisiana law applies to the substantive issues before the Court.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  In Louisiana, the sources of law are legislation and custom.  *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004). These authoritative or primary sources of law are to be "contrasted with persuasive or secondary sources of law, such as

[Louisiana and other civil law] jurisprudence, doctrine, conventional usages, and equity, that may guide the court in reaching a decision in the absence of legislation and custom." *Id.* (*quoting* La. Civ. Code art. 1*).*  In Louisiana, "courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes."  *Id.* (*quoting Prytania Park Hotel, Ltd. v. General Star Indem. Co.,* 179 F.3d 169, 174 (5th Cir. 1999)).*  To make an 'Erie guess' on an issue of Louisiana law, the Court must "employ the appropriate Louisiana methodology" to decide the issue the way that it believes the Supreme Court of Louisiana would decide it.  *Id.* (*quoting Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 197 (5th Cir. 2003)).

### B.   Removal

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action.  *See* 28 U.S.C. § 1441(a).  The removing party bears the burden of showing that federal jurisdiction exists.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited jurisdiction, that removal statutes should be strictly construed.

*See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Neal v. Kawasaki Motors Corp.*, 1995 WL 419901, at *2 (E.D. La. 1995).  Though the Court must remand the case to state court if at any time before final judgment it appears that it lacks subject matter jurisdiction, the Court's jurisdiction is fixed as of the time of removal.  28 U.S.C. § 1447(c); *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996).

### C.   Improper Joinder

When a nondiverse party is properly joined as a defendant, a defendant may not remove under section 1332.  However, a defendant may remove by showing that the nondiverse party was improperly joined.  *Smallwood v. Il. Cent. R.R. Co.*, 352 F.3d 220, 222 (5th Cir. 2003).  Because the doctrine is a narrow exception to the rule of complete diversity, the burden of demonstrating improper joinder is a heavy one.  *Id*.  Improper joinder may be established by showing: (1) actual fraud in pleading jurisdictional facts; or (2) the inability of the plaintiff to establish a cause of action against the nondiverse defendant.[1]  *Ross v. Citifinancial, Inc*., 344 F.3d 458, 461 (5th

---

[1] The Fifth Circuit now officially refers to "fraudulent joinder" as "improper joinder."  *See Melder v. Allstate Corp.*, 404 F.3d 328, 329 (5th Cir. 2005).  However, the term "fraudulent joinder" is still used in many Fifth Circuit cases, causing no

Cir. 2003).  In *Ross*, the Fifth Circuit clarified the standard
for finding improper joinder when a defendant alleges that
plaintiff is unable to state a claim against the nondiverse
defendant.  *Id*. at 462-63.  The Court must determine whether
there is arguably a reasonable basis for predicting that state
law might impose liability on the nondiverse defendant.  *Id.
(citing Great Plains Trust Co. v. Morgan Stanley Dean Witter &
Co*., 313 F.3d 305, 312 (5th Cir. 2002)).  This means that there
must be a reasonable possibility of recovery, not merely a
theoretical one.  *Id.*  The standard for evaluating a claim of
improper joinder is similar to that used in evaluating a motion
to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Id.*
The scope of the inquiry for improper joinder, however, is
broader than that for Rule 12(b)(6), because the Court may
"pierce the pleadings" and consider summary judgment-type
evidence to determine whether the plaintiff has a basis in fact
for his or her claim.  *Id.* (*citing Travis v. Irby*, 326 F.3d 644,
648-49 (5th Cir. 2003); *see also Hornbuckle v. State Farm Lloyds*,
385 F.3d 538, 542 (5th Cir. 2004).  In conducting this inquiry,
the Court "must also take into account all unchallenged factual
allegations, including those alleged in the complaint, in the

---

shortage of confusion.

5

light most favorable to the plaintiff." *Travis*, 326 F.3d at 649. In addition, the Court must resolve all ambiguities of state law in favor of the nonremoving party. *Id*.

## III. DISCUSSION

Plaintiffs allege that they contracted with Hartwig Moss to procure homeowner's and flood insurance to cover their residence and personal property.  Plaintiffs also allege that in July 2004 Hartwig Moss requested on behalf of Vigilant that plaintiffs' property be appraised and that the structure was appraised for a value of $889,000 and the contents, for a value of $444,500.  (R. Doc. 7-5, at 2).  Plaintiffs further assert that in July 2004 they conferred with Hartwig Moss to assure that their residence and its contents were insured for the full appraised value. Plaintiffs allege that Hartwig Moss nevertheless purchased a flood insurance policy for them in the amount of only $250,000 for the dwelling and $100,000 for its contents, even though they had asked to be insured for the full appraised value of their residence, and Hartwig Moss was aware of that value because it had secured a homeowner's policy for the plaintiffs with limits up to the July 2004 appraised value.  As a result, plaintiffs allege that Hartwig Moss breached its duty to plaintiffs by failing to recommend and procure excess flood insurance.

6

Plaintiffs assert that Hartwig Moss's actions left them "grossly underinsured" for flood insurance coverage.

Vigilant contends that Hartwig Moss was improperly joined as a defendant in this lawsuit for three reasons: (1) the Botnicks cannot show as a matter of law that Hartwig Moss owed a duty to them in this context; (2) the claims against Hartwig Moss are perempted under La. Rev. Stat. § 9:5606; and (3) those claims are completely unrelated to the claims against Vigilant.  Joinder of Hartwig Moss was improper if the Court finds in the defendants' favor on any of these grounds.  The Court now addresses each of the defendants' arguments in turn.

Vigilant maintains that the only claim that the Botnicks have alleged against Hartwig Moss is for failure to advise them of the availability of excess flood insurance.  Vigilant argues that such a claim does not exist under Louisiana law because Hartwig Moss did not owe a fiduciary duty to the Botnicks here. As discussed above, this Court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability.  This means that there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross*, 344 F.3d at 462 (emphasis in original).  The Court finds that there is such an arguably reasonable basis to predict that Hartwig Moss might be held liable under Louisiana law.

7

It is well established under Louisiana law that a plaintiff may recover for his insurance agent's failure to procure requested insurance coverage.  The Louisiana Supreme Court has held: "An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he has failed to obtain the requested coverage." *Karam v. St. Paul Fire & Marine Ins. Co.*, 281 So.2d 728, 730 (La. 1973).  An insurance agent is more than a "mere order taker" for the insured. *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 230 (5th Cir. 1990) (quoting *Durham v. McFarland, Gay and Clay Inc.*, 527 So.2d 403, 405 (La. Ct. App. 1988)).  Citing *Karam*, the Fifth Circuit stated:

> In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured.

*Offshore Prod. Contractors*, 910 F.2d at 229.  Plaintiffs here have sufficiently alleged facts that satisfy each of these three elements.

When Hartwig Moss became the Botnicks' insurance agent of record, Hartwig Moss undoubtedly entered into an agreement with the Botnicks to procure their insurance coverage.  As such, Hartwig Moss's fiduciary duties to the Botnicks as their insurance agent included advising the Botnicks with regard to recommended coverage.  *Id.* at 230.  When an agent has reason to know the risks against which an insured wants protection and has experience with the types of coverage available in a particular market, "we must construe an undertaking to procure insurance as an agreement by the agent to provide coverage for the client's specific concerns."  *Id.* (citing to several Louisiana appellate court decisions).  In his affidavit filed with the Court on June 19, 2006, Michael Botnick avers that he "requested the maximum amount of insurance to fully insure our residence up to its appraised value and to fully insure our personal property."  He further avers that Hartwig Moss sold him a flood insurance policy far below the appraised value of the plaintiffs' residence and contents, in spite of his request for full coverage.  He states that had he known flood insurance with higher liability limits was available for purchase at that time, plaintiffs would have purchased it.

Construing Botnick's affidavit and all inferences in plaintiffs' favor, it appears the Botnicks requested that Hartwig

9

Moss obtain flood insurance for the full appraised value of their residence.  The Court recognizes that the facts of this case do not present as explicit a request to obtain excess flood insurance as was involved in *Sullivan v. State Farm Fire & Cas. Ins. Co.*, No. 06-0004, at R. Doc. 59 (E.D. La. Aug. 23, 2006) (Duval, J.).  There, the plaintiffs specifically asked their agent if excess flood insurance was available "and the inference [was] that he said no," even though it was in fact available. *Id.* at 17.  But at the very least, under the Botnicks' set of facts, Hartwig Moss should have been aware that plaintiffs wanted to obtain excess flood insurance, given their stated request for full coverage up to the appraised value of the residence, which far exceeded $250,000.  Furthermore, the Fifth Circuit has found it unnecessary for the plaintiff to specifically name the precise type of insurance coverage when, as here, the insured knows little about the particular insurance market. *Offshore Prod. Contractors*, 910 F.2d at 230.  "In such circumstances, we can hardly expect the insured to request by name the specific coverage which the insured desires." *Id.*

Because the Court finds that the facts in Botnick's affidavit can be construed as a request to obtain excess flood insurance, the Court also finds an arguably reasonable basis to predict that Louisiana law might hold Hartwig Moss liable for its

failure to recommend or procure excess flood insurance.  As Judge Edith Jones wrote in *Offshore Production Contractors*, *supra*, "Where an insurance broker has experience in a particular field, that broker should possess reasonable knowledge of the general types of policies available, understand their different terms, and explore the specific coverage available in the area in which the client seeks to be protected."  *Id.* at 231.  Hartwig Moss does not dispute that excess flood insurance was available for purchase at the time of the Botnicks' appraisal in July 2004. Further, plaintiffs allege that Hartwig Moss never alerted the Botnicks of the availability of such insurance, nor is there any indication that Hartwig Moss attempted to purchase it after their request.  On these alleged facts, under Louisiana law, there is an arguably reasonable basis to predict that Hartwig Moss would be found to have breached its duty of reasonable diligence in procuring the plaintiffs' desired coverage.

Finally, Michael Botnick stated in his affidavit that the Botnicks relied on Hartwig Moss's experience, knowledge, and expertise for procurement advice on both homeowners and flood insurance.  On the facts alleged by the Botnicks, when Hartwig Moss sold a flood insurance policy to the Botnicks in 2004 with a dwelling limit of $250,000, after the Botnicks' stated desire for full coverage of the property's appraised value, there is an

arguably reasonable basis to predict that Louisiana law might hold that Hartwig Moss's actions led plaintiffs to believe they were insured for the maximum amount available.  Thus, the Botnicks have made sufficient allegations to reasonably predict that a Louisiana court might find Hartwig Moss liable to plaintiffs under Louisiana law.

Vigilant however contends that the Court should not consider Botnick's affidavit because it was untimely.  Vigilant relies on inapposite case law for this proposition, citing to two recent district court cases that address affidavits in motions to remand when the amount in controversy was in question.  *See Davis v. State Farm*, No. 06-0560, *et al*, 2006 WL 1581272, *4 (E.D. La. June 7, 2006); *Gatlin v. Dolgencorp, Inc.*, No. 05-2114, 2006 WL 568296, *1 (W.D. La. Mar. 6, 2006).  Rather, in motions to remand in which joinder is the issue, the Fifth Circuit has held:

> We clearly expressed in *B., Inc. v. Miller Brewing Co.* that 'in support of . . . a motion for remand, the plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint.' Our decisions subsequent to *B., Inc.* have consistently maintained that a district court may look to evidence outside of the pleadings in determining a fraudulent joinder claim.

*Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

12

Further, Vigilant's argument that Botnick's affidavit improperly presents a new cause of action or theory in contravention of Fifth Circuit law is incorrect. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."). Post-removal affidavits are appropriate to clarify or amplify the claims made in the original petition. *Id.* Here, the plaintiffs stated in their state court petition that they "relied on the experience and expertise of Hartwig Moss to provide advice and recommendations as to the procurement of insurance." They also stated that their residence was appraised at $889,900. Thus, the affidavit merely supplements the claims made in the petition and is appropriate for the Court to consider for the purposes of this motion.

Vigilant also asserts that because the only named insured on the plaintiffs' flood insurance policy at the time of Katrina was Sidney Lassen, who is not a plaintiff in this action, Hartwig Moss did not owe a duty to procure the Botnicks' requested flood insurance. Both parties agree that at the relevant time the named insured on the flood policy was Sidney Lassen, but the Botnicks contend that it was through Hartwig Moss's negligence

13

that their names were not listed on the policy as the insureds.
In his affidavit, Michael Botnick avers that the Botnicks, not
Sidney Lassen, paid all of the premiums on their flood insurance
policy to Hartwig Moss, from 2002 through Katrina.  Botnick
further states that Hartwig Moss changed the named insured on
their homeowner's policy to both Michael and Jill Botnick.  At
most, this creates a factual dispute as to whether the Botnicks
should have been the named insureds on the flood policy.  As the
Fifth Circuit re-emphasized in *Burden*, on motions such as this
one, the Court must resolve all disputed questions of fact in the
plaintiffs' favor:

> Lest there remain even a shadow of a doubt as to this
> circuit's position, we reiterate – in hopes that
> further pronouncement will not be necessary - that in
> testing for fraudulent joinder the district court in
> its discretion may 'pierce the pleadings,' albeit in
> so doing the court should not conduct an evidentiary
> hearing but, based on appropriate documentation in
> addition to the pleadings, *should instead resolve all
> disputed questions of fact in favor of the plaintiff*.

60 F.3d at 217 (emphasis added).  Given that Michael Botnick's
affidavit establishes contested issues of fact that when resolved
in the plaintiffs' favor could permit recovery against Hartwig
Moss under applicable Louisiana law, the Court finds that Hartwig
Moss was not improperly joined.  Furthermore, recent decisions in
the Eastern District of Louisiana support this conclusion.  *See,
e.g., Richmond v. Chubb Group of Ins. Cos.*, No. 06-3973, 2006 WL

14

2710566 (E.D. La. Sept. 20, 2006) (Africk, J.); *Sullivan, supra*;
*Schwartz v. Chubb & Sons, Inc.*, No. 05-6885, 2006 WL 980673 (E.D.
La. Apr. 11, 2006) (Fitzwater, J.[2]).

Defendants however contend that even if Hartwig Moss owed a
duty to the plaintiffs, any claim arising from that duty is
perempted under La. Rev. Stat. § 9:5606, which states in part:

> No action for damages action any insurance agent,
> broker, solicitor, or other similar licensee under
> this state, whether based upon tort, or breach of
> contract, or otherwise, arising out of an engagement
> to provide insurance services shall be brought unless
> filed in a court of competent jurisdiction and proper
> venue within one year from the date of the alleged
> act, omission, or neglect, or within one year from
> the date that the alleged act, omission, or neglect
> is discovered or should have been discovered.
> However, even as to actions filed within one year
> from the date of such discovery, in all events such
> actions shall be filed at the latest within three
> years from the date of the alleged act, omission, or
> neglect.[3]

La. Rev. Stat. § 9:5606(A).  Defendants allege that any relevant
acts in this case occurred no later than November 2002, when
Hartwig Moss was named as the Botnicks' insurer of record.  (R.
Doc. 16, at 6).  They contend that this case is governed by the

---

[2] Judge Fitzwater sat by designation due to the recusal of
Judge Schwartz's colleagues in the Eastern District.  2006 WL
980673, at *1.

[3] Under Louisiana law, "Peremption is a period of time fixed
by law for the existence of a right.  Unless timely exercised,
the right is extinguished upon the expiration of the peremptive
period."  La. Civ. Code art. 3458.

principle that subsequent renewals of insurance policies do not restart the peremptive period for acts or omissions committed at the time of initial purchase. *See Biggers v. Allstate Ins. Co.*, 886 So.2d 1179, 1182-83 (La. Ct. App. 2004); *Bel v. State Farm Mut. Auto. Ins. Co.*, 845 So.2d 377, 382-83 (La. Ct. App. 2003; *see also Bordelon v. The Indep. Order of Foresters*, 2005 WL 3543815, at *3 (E.D. La. Oct. 4, 2005). As the plaintiffs did not commence this action in state court until March 28, 2006, defendants assert that the three-year limitation bars plaintiffs' claims against Hartwig Moss.

Again, this Court must determine "whether there is arguably a reasonable basis for predicting that state law might impose liability." *Ross*, 344 F.3d at 462. The Court begins with a Rule 12(b)(6) type-analysis, "looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Plaintiffs allege in their complaint that Hartwig Moss failed to advise them of excess flood insurance to cover the full appraised value of their residence. (R. Doc. 1-5, at 7). However, plaintiffs do not identify when this alleged conduct took place, therefore the Court cannot determine from the face of the pleadings whether the plaintiffs' claims are perempted and that

16

plaintiffs are unable to prove a set of facts entitling them to relief.  As such, the Court may "pierce the pleadings and conduct a summary inquiry."  *Smallwood*, 385 F.3d at 573.

Here, the Court is presented with two conflicting affidavits on this issue.  Michael Botnick provides an affidavit that places these events in July of 2004.  He states that "[o]n July 30, 2004, our residence was appraised at the request of Hartwig Moss on behalf of Vigilant for $889,000."  (R. Doc. 7-5, at 2).  He further avers that at that time he conferred with Hartwig Moss to confirm that it had obtained insurance for the full appraised value.  As a result of his communication, Botnick avers that the limits on the Botnicks' homeowners policies were increased to the property's appraised value, but Hartwig Moss sold plaintiffs flood insurance with limits of $250,000 for the dwelling and $100,000 for contents without advising them of the availability of excess flood coverage.  On the plaintiffs' allegations then, this is not a situation in which the policy was simply renewed without any substantive undertaking and communications between the parties.  Hartwig Moss, on the other hand, contends that Michael Botnick's allegations are false, and it filed an affidavit from its chief executive officer, Hartwig Moss III, in which he avers that the agency "is not aware of any appraisals of the plaintiffs' property other than the one conducted by Chubb in

17

2002." (R. Doc. 15-1, at 6).

The purpose of the Court's summary inquiry, in which it pierces the pleadings, is "only to identify the presence of discrete and undisputed facts that would preclude [plaintiffs'] recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. As the competing affidavits show the existence of a factual dispute regarding whether Hartwig Moss's act, omission, or neglect took place within the one-year/three-year peremptive period, the Court must resolve the issue in plaintiffs' favor. *See Burden*, 60 F.3d at 217. The Court thus cannot conclude that the plaintiffs are unable to prove a set of facts on the issue of peremption that could entitle them to relief. Joinder of Hartwig Moss was not improper on this ground.

Finally, Vigilant asserts that Hartwig Moss is improperly joined because the Botnicks' claims against Vigilant are unrelated to their claims against Hartwig Moss. Vigilant relies on the Eleventh Circuit's decision in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), which found that when a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and when the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant, this can serve as a third situation of fraudulent joinder in

addition to the two identified in *Smallwood*.  *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (summarizing the holding in *Tapscott*).  The Fifth Circuit appears to have adopted *Tapscott*'s fraudulent joinder principle in *In re Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002).  Even so, the plaintiffs' claims against their insurance provider and agent are not improperly joined.  The Botnicks' claims each arise from what they allege was a lack of coverage for the damages their residence sustained in the aftermath of Katrina, satisfying the requirement for joinder under Fed. R. Civ. P. 20.  (Rule 20(a) states in pertinent part: "All persons . . . may be joined in one action as defendants if there is asserted against jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.")  In similar factual contexts, courts in this district have found a "palpable connection" between claims against an insurance company and an insurance agent, such that the claims were not fraudulently joined.  *See Radlauer v. Great N. Ins. Co.*, No. 06-1737, 2006 WL 1560791, at *5-6 (E.D. La. May 16, 2006) (Zainey, J.); *see also Richmond*, 2006 WL 2710566, at *6; *Schwartz*, 2006 WL 980673, at *5.  The Court thus concludes that there is no improper joinder

19

on this ground.  As such, complete diversity is lacking, and the
Court does not have subject matter jurisdiction over this case.

## IV.  ATTORNEY'S FEES

Plaintiffs also move under 28 U.S.C. § 1447(c) for an award
of attorney's fees and costs for defendants' improper removal.
The decision whether to award attorney's fees and/or costs is
discretionary.  *See Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir.
1993).  "Absent unusual circumstances, courts may award
attorney's fees under § 1447(c) only where the removing party
lacked an objectively reasonable basis for seeking removal.
Conversely, when an objectively reasonable basis exists, fees
should be denied."  *Martin v. Franklin Capital Corp.*, --- U.S. --
--, 126 S.Ct. 704, 711, 163 L.Ed.2d 547 (2005) (citing
*Hornbuckle*, 385 F.3d at 541; *Valdes v. Wal-Mart Stores, Inc.*, 199
F.3d 290, 293 (5th Cir. 2000)).  Because the Court does not find
the removal in this case objectively unreasonable, the Court
exercises its discretion not to grant plaintiffs' request for
attorney's fees and costs.

**V.    CONCLUSION**

For the foregoing reasons, the Court GRANTS plaintiffs' motion to remand to state court.


New Orleans, Louisiana, this <u>13th</u> day of October, 2006.

<u>_Sarah Vance_</u>

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

21